# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**GLOBE SPECIALTY METALS,**
**Employer Below, Petitioner**

**FILED**
**December 15, 2023**
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-380**       (JCN: 2020001961)

**VERNON CARPENTER,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Globe Specialty Metals ("GSM") appeals the July 26, 2023, order of the Workers' Compensation Board of Review ("Board"). Respondent Vernon Carpenter timely filed a response.[1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in reversing the claim administrator's order, which denied a request to reopen Mr. Carpenter's claim for temporary total disability ("TTD") benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 19, 2019, Mr. Carpenter reported an injury to his right knee "when prying over carbon with a slate bar and felt something give in his leg." According to the Board's October 6, 2022, order, Mr. Carpenter completed an Employees' and Physicians' Report of Occupational Injury or Disease form, which indicated a diagnosis of right knee sprain. The Board's order noted that the form also indicated that the injury aggravated a prior injury. The Board's order further noted that on September 13, 2018, Mr. Carpenter was diagnosed with a right acute medial posterior meniscus horn tear and later underwent arthroscopy with partial medial meniscectomy to repair the tear. By order dated September 24, 2019, the claim administrator denied the claim.

Subsequently, in January of 2020, Mr. Carpenter underwent an MRI of the right knee. The MRI revealed a prior partial meniscectomy of the medial meniscus posterior horn with an absent portion of the posterior horn. Linear signal abnormalities extending into the posterior root and the anterior body were also noted, which could represent either

---

[1] GSM is represented by Jeffrey B. Brannon, Esq. Mr. Carpenter is represented by Patrick K. Maroney, Esq.

residual or new horizontal oblique tears. There was low-grade chondrosis of the patellar apex with no deep chondrosis evident in any of the three compartments. A trace Baker's cyst was noted. There was no ligamentous pathology.

On March 19, 2021, the Office of Judges ("OOJ") reversed the September 24, 2019, claim administrator order, and held the claim compensable for a right knee sprain, which was later affirmed by the Board. On May 4, 2021, John Pierson, M.D., completed a Diagnosis Update form, requesting that a right acute posterior medial meniscus horn tear be added as a compensable condition in the claim. By order dated May 7, 2021, the claim administrator denied the request, finding that the requested condition was not causally related to the injury sustained on July 19, 2019. Mr. Carpenter protested this order.

In November of 2021, Mr. Carpenter and Dr. Pierson completed a claim reopening application for temporary total disability "(TTD") benefits. The form indicated that Mr. Carpenter had experienced an aggravation and/or progression of the condition resulting from the compensable injury and facts or factors pertaining to the disability that had not been previously considered. Dr. Pierson listed the medial meniscus tear of the right knee as the diagnosis and indicated that Mr. Carpenter continued to have diffuse pain that was worsening due to constantly being on his feet and that his knee was "giving away" due to lack of improvement from conservative treatment. Dr. Pierson requested authorization for a right knee arthroscopy with debridement of the medial meniscus. Dr. Pierson listed the period of TTD as November 4, 2021, through February 7, 2022. On November 9, 2021, the claim administrator denied the reopening application, finding that the evidence submitted did not establish that Mr. Carpenter had sustained an aggravation or progression of the compensable injury or that the disability referenced in the form was related to the compensable injury. Mr. Carpenter protested this order.

Mr. Carpenter underwent an arthroscopy of the right knee with partial medial meniscectomy in April of 2022, which was performed by Paul Legg, M.D. On June 21, 2022, the OOJ affirmed the claim administrator's November 9, 2021, order, by rule, noting that Mr. Carpenter had failed to submit any evidence in support of his protest. Dr. Legg released Mr. Carpenter to return to work on May 9, 2022.

Thereafter, Dr. Legg assisted Mr. Carpenter in completing a new claim reopening application for TTD benefits on July 8, 2022, seeking retroactive TTD benefits from November 4, 2021, to May 9, 2022, due to the meniscus tear. The application indicated that there had been no aggravation and/or progression of the condition occurring after the claimant had resumed employment or reached maximum medical improvement ("MMI") and listed the current diagnoses as "after care" and tear of the right medial meniscus.

By order dated September 12, 2022, the claim administrator denied Mr. Carpenter's July 2022 TTD reopening application. On October 6, 2022, the Board reversed the claim administrator's May 7, 2021, order and accepted the condition of right acute posterior

medial meniscus horn tear as a compensable diagnosis in the claim. The Board also retroactively approved the arthroscopy/debridement of the medial meniscus. Subsequently, Mr. Carpenter and Dr. Legg completed another claim reopening application for TTD benefits in November of 2022, which was nearly identical to the reopening application filed in July 2022. Dr. Legg indicated that there had been no aggravation and/or progression of the condition occurring after the claimant had resumed employment or reached MMI and listed the current diagnoses as "after care" and tear of the right medial meniscus. It is important to note that though Dr. Legg indicated that no aggravation or progression of the compensable injury had occurred, the question is phrased to ask whether an aggravation or progression occurred *after* the claimant had reached MMI or resumed employment. At the time Dr. Legg was completing this application, he had already released Mr. Carpenter to work and was indicating that there had been no aggravation or progression since that date. Indeed, Dr. Legg indicated that the period Mr. Carpenter was temporarily and totally disabled was from November 4, 2021, the date Dr. Pierson took Mr. Carpenter off work, through May 9, 2022, the date Dr. Legg released him to work.

Mr. Carpenter testified via deposition on March 6, 2023, regarding his injury and resulting treatment. Mr. Carpenter indicated that he received short-term disability from around December of 2021, through May of 2022.

On May 25, 2023, GSM submitted a closing argument, asserting that Mr. Carpenter did not establish an aggravation to or progression of the compensable injury to justify reopening the claim for TTD benefits. GSM further argued that, even if Mr. Carpenter had established that he was entitled to TTD benefits, an offset would be made against the TTD benefits for the amount of short-term disability benefits that he had received. Lastly, GSM argued that the litigation was barred by the doctrine of res judicata because the issue had previously been litigated to finality.

By order dated July 26, 2023, the Board reversed the claim administrator's order and granted Mr. Carpenter TTD benefits from November 4, 2021, through May 9, 2022, with an offset pursuant to West Virginia Code § 23-4-1c(j) (2009) for any short-term disability benefits Mr. Carpenter may have received while this claim was denied. The Board noted that the claim had been held compensable for a right knee sprain and a right acute posterior medial meniscus horn tear and that Mr. Carpenter had not received any TTD benefits. The Board further noted that the right acute posterior medial meniscus horn tear was not added to the claim until October of 2022. The Board found that Dr. Legg had indicated that Mr. Carpenter was temporarily and totally disabled from November 4, 2021, through May 9, 2022, due to the meniscal tear and related surgery, and that no evidence to the contrary had been submitted.

Regarding the short-term disability benefits Mr. Carpenter received, the Board found that neither the short-term disability plan agreement nor the dates these benefits were paid was submitted before the Board. The Board noted that under West Virginia Code §

3

23-4-1c(j), an offset of benefits is appropriate if a claimant receives short-term disability benefits under a "plan provided by the employer to which the employee has not contributed." Here, because the record did not provide such details, the Board declined to address whether Mr. Carpenter had contributed toward the plan and whether the plan included an offset for TTD benefits. GSM now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, GSM argues that Mr. Carpenter failed to demonstrate that he had an aggravation or progression of his compensable injury that warranted TTD benefits. GSM argues that Mr. Carpenter submitted two separate reopening applications dated July 8, 2022, and November 9, 2022, and that both times Dr. Legg checked a box affirmatively stating that Mr. Carpenter had not suffered an aggravation or progression of the compensable condition. GSM further argues that this issue is barred by res judicata and collateral estoppel principles. GSM states that the issue of TTD benefits during the requested period was previously finally litigated when the OOJ affirmed the claim administrator's order denying the benefits, which Mr. Carpenter did not appeal. As such, GSM states that Mr. Carpenter is barred from raising any argument regarding TTD benefits. We disagree.

As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483

4

(1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in reversing the claim administrator's orders and granting the petition to reopen the claim for TTD benefits.

In order to reopen a claim for TTD benefits, a claimant must show an aggravation or progression of a compensable condition or facts not previously considered. *See* West Virginia Code § 23-5-2 (2005) and § 23-5-3a (2022). GSM argues that Mr. Carpenter failed to demonstrate a progression or aggravation of his compensable condition; however, GSM completely ignores the second basis upon which a claim for TTD benefits may be reopened—the presence of facts not previously considered.[2] GSM is correct that the claim administrator issued an order denying TTD benefits, which the OOJ affirmed by rule and Mr. Carpenter did not appeal. However, importantly, the claim had not yet been held compensable for the medial meniscus tear. At the time the initial two applications for TTD benefits were being considered by the lower tribunals, the claim was only compensable for a knee sprain. The meniscus tear was not added to the claim until October of 2022 and, following the order holding that diagnosis compensable, Dr. Legg completed a third reopening application, which listed the meniscus tear as the basis of Mr. Carpenter being temporarily and totally disabled. The addition of the medial meniscus tear to the claim is sufficient to demonstrate a fact not previously considered, warranting the opening of the claim for TTD benefits.

We likewise find that any arguments regarding collateral estoppel or res judicata do not apply.[3] Because the meniscus tear had not been added to the claim at the time the prior

---

[2] To the extent GSM argues that Dr. Legg indicated on the reopening application that Mr. Carpenter had not suffered an aggravation or progression to the compensable injury, we find such argument to be a mischaracterization of the evidence. The question referenced by GSM is stated as follows: "Has there been an aggravation or progression of the claimant's disability *since being released to resume employment or being certified as having reached maximum degree of medical improvement*?" (Emphasis added). Dr. Legg checked "No" in response. Importantly, Dr. Legg completed the form after Mr. Carpenter had been released to work on May 9, 2022, and was indicating that Mr. Carpenter's period of TTD was from November 4, 2021, when Dr. Pierson took him off work, until May 9, 2022, the date Dr. Legg released him to work following the authorized surgery to repair the meniscus tear. Accordingly, contrary to GSM's argument, Dr. Legg was not indicating that no aggravation or progression had occurred at all. Instead, he was simply indicating that no aggravation or progression had occurred after May 9, 2022. Moreover, as addressed more fully above, GSM's argument focuses solely on the aggravation and/or progression of a compensable condition and fails to consider that the addition of the meniscal tear and resultant authorized surgery were facts not previously considered, which warranted reopening the claim for TTD benefits.

[3] As the Supreme Court of Appeals of West Virginia recently explained,

reopening applications were litigated to finality, there were no holdings on the merits as it pertained to TTD benefits attributable to that diagnosis. Accordingly, these doctrines are not implicated here.

For the foregoing reasons, we affirm the Board's July 26, 2023, order.

Affirmed.

**ISSUED:** December 15, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

---

[c]ollateral estoppel pertains to "issue" preclusion and requires that an identical issue have been "actually litigated" among the parties or their privies in other litigation. Res judicata pertains more broadly to "claim" preclusion and bars relitigation of claims that were either actually litigated or could have been litigated in other proceedings.

*Chalifoux v. W. Va. Dept. of Health and Human Res.*, __ W. Va. __, __ S.E.2d __, 2023 WL 7038448, at *10 (2023).